IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JERI NORRIS | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.4:14-cv-00816 |
| | § | |
| DIRECT ENERGY, LP | § | |
|    Defendant. | § | JURY DEMANDED |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

    COMES NOW Plaintiff Jeri Norris ("Plaintiff" or "Norris"), and complains of Direct Energy ("Defendant" "DE"), and for her cause of action would show the Court as follows:

## I.
## INTRODUCTION

    1.    This action seeks equitable relief, actual, compensatory and punitive damages, attorney's fees, expert witness fees, taxable costs of court, prejudgment and post-judgment interest for violations of the Americans with Disabilities Act ("ADA"), violations of the Family Medical Leave Act ("FMLA"), suffered by Plaintiff in the course of her employment with Defendant, and unjust enrichment by Defendant to the detriment of Plaintiff.

    2.    Plaintiff demands a jury on all issues triable to a jury.

## II.
## PARTIES

    3.    Plaintiff Jeri Norris is a resident of Lampasas County, Texas.

4. Defendant Direct Energy is a Texas Corporation and may be served with the summons through its registered agent for service, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

5. Whenever in this Complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## III.
## JURISDICTION AND VENUE

6. This is a civil action over which this court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 (a)(3) and (4), and 1367.

7. The Court has personal jurisdiction over Defendant since it regularly conducts business in the State of Texas, and therefore has minimum contacts with the State of Texas.

8. Alternatively, the Court has personal jurisdiction over Defendant since the acts giving rise to this suit occurred within the State of Texas.

9. Venue is proper in the Southern District of Texas, under 28 U.S.C. § 1391(b) since a substantial part of the events or omissions giving rise to this cause of action occurred in the Southern District of Texas.

10. This Court has jurisdiction over all claims in this action.

## IV.
## PROCEDURAL REQUISITES

11. On or about June 6, 2013, Plaintiff filed a Charge of Discrimination and Retaliation against Defendant under Charge Number 460-2013-02759 with the Equal Employment Opportunity Commission ("EEOC").

12. On or after March 25, 2014, the EEOC issued a Notice of Right to Sue letter entitling Plaintiff to file an action in this Court.

13. This Complaint has been filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue letter.

14. All conditions precedent to filing this cause of action have been met.

## V.
## FACTS

15. In 2009, Norris began working for Defendant at DE's Houston Office as the Director of Sales Operations North America, Direct Sales.

16. During her employment with Defendant, Plaintiff was a successful in this position.

17. From 2009 to March 2012, Plaintiff received excellent reviews and sizeable performance-based bonuses. In November 2011 she was promoted to a broader Director of Sales Operations role.

18. Plaintiff was not disciplined, reprimanded, counseled or placed on a Performance Improvement Plan between her hiring in 2009 through July 2012.

19. In July 2011, Plaintiff was involved in a motorcycle accident that caused severe and debilitating injuries, including a brachial plexus injury and a broken right ulna and radius that ultimately led to almost complete paralysis to her right arm and hand. She was in the

hospital for several days after the accident, and returned to her duties approximately eight days after the accident, working from home.

20. From August through October 2011 Plaintiff worked full-time either from home or, as her pain levels would allow, from the office. Working from home was not unusual for Direct Energy employees, and Plaintiff's supervisor approved her work from home.

21. In October 2011 Plaintiff had nerve graft surgery in an attempt to reverse the paralysis in her right shoulder and arm. Plaintiff was in the hospital for three days in October. Plaintiff's physician ordered Plaintiff to take six weeks from work for recuperation due to the fragile state of the grafted nerves and the time required for healing and regeneration.

22. Plaintiff's supervisor requested that Plaintiff find a way to work during her recuperation period. Under pressure from DE and against medical advice Plaintiff worked for DE from home during that time, fulfilling the essential functions of her job.

23. Despite the surgery Plaintiff's paralysis did not resolve and she was left with very little or no use of her right arm and hand.

24. Due to her continued paralysis and the extended healing period Plaintiff continued to work from home. She worked full time during this period and continue to capably fulfill the essential functions of her job.

25. Plaintiff still had not been released to work onsite at DE as of January 2012. Nevertheless, in late January Plaintiff's supervisor, Mike Beck, informed Plaintiff that he expected her back in the office full time. Plaintiff had not been released by her doctors but became fearful of losing her job. She returned to work at the office location full time on January 30, 2012. She had not been released for working in the office by her doctors, nor had the doctors given her a release to drive.

26. In March 2012 Plaintiff received a favorable performance review and a significant bonus. In April 2012 Plaintiff was given a raise.

27. In the months following her return to work and until her termination, Plaintiff required reasonable accommodations that would allow her to perform her duties.

28. After her accident Plaintiff necessarily compensated for the loss of use of her right arm and hand by increasing her use of her left arm and hand. Over time this increased use began to take a toll. In late July 2012 Plaintiff supervisor, Mike Beck, saw Plaintiff wearing an arm brace on her left arm. He asked Plaintiff about the brace and Plaintiff told him that her doctor ordered her to wear the brace and suggested she may need surgical intervention at some point for the left wrist.

29. Approximately two weeks after the conversation with Mike Beck about the brace, and without any intervening performance issues or discussions, Plaintiff was preparing for a regularly-scheduled one-on-one meeting with Mike Beck. Instead she found herself in a meeting with Mr. Beck and a Human Resources Department representative. They told Plaintiff she could either accept being put on a performance improvement plan ("PIP") or accept a severance package.

30. Neither Beck nor the HR representative provided an actual proposed PIP, or even a draft PIP, to Norris. The details of the proposed PIP, including any areas in which Norris allegedly needed to improve, were not discussed. Plaintiff was told to take the rest of the week off and that she had until Monday, August 20, 2012, to tell them which option she would choose.

31. On Friday, August 17, 2012, Plaintiff had a very high fever and was treated in an emergency room for an unspecified illness. Early on the morning of Monday, August 20, 2012, Plaintiff was hospitalized with a high fever and an infection caused by an abscess resulting from

the various procedures and the condition of Plaintiff's right arm and hand. Plaintiff's boyfriend notified DE of her hospitalization.

32. Plaintiff remained in the hospital for approximately ten days. During that time doctors performed surgery to clean out the abscess and the large wound was left open to drain. During this time Plaintiff's boyfriend filled out medical leave paperwork and kept DE informed of the situation as circumstances allowed.

33. On August 28, 2012, while Plaintiff was still in the hospital, DE sent a letter to Plaintiff informing her that the PIP was no longer an available option as the deadline for acceptance had passed, and that she was being terminated.

34. Prior to late July 2012, neither Mike Beck nor any other supervisor discussed negative performance-related issues with Plaintiff. Beck did make occasional vague references to Plaintiff's impairments and recovery, including indicating his disappointment that she was not the "same old Jeri" that she had been before her accident.

35. At the time of the meeting with Plaintiff to inform her of her choice between a PIP and resignation, Defendant was aware that Plaintiff needed reasonable, and in fact very minor, accommodations for her paralyzed right hand and arm. Defendant was aware that Plaintiff was suffering pain and impairment in her left arm, and that she may require surgery and reasonable accommodations in the future for that condition, as well.

36. At the time of her termination Plaintiff's supervisors knew of her hospitalization and medical condition.

## VI.
## CAUSE OF ACTION - DISABILITY DISCRIMINATION

37. Plaintiff reasserts and incorporates by reference herein all the facts and allegations set forth above.

38. Plaintiff is an individual with a disability as defined by the ADA who has the requisite skill, experience, education and other job related requirements necessary to perform, with or without accommodation, the essential functions of a Director of Sales Operations position.

39. Plaintiff was disabled or viewed as disabled by Defendant.

40. At the time of her employment with Defendant, Plaintiff was a "qualified individual with a disability" within the ADA. 42 U.S.C.A. § 12111(8); 29 C.F.R. § 1630.2(m)

41. Plaintiff was terminated by Defendant in violation of the ADA.

42. Plaintiff was replaced by a worker who was not disabled or was not viewed as disabled by Defendant.

43. The ADA requires that employers and employees take part in an "interactive process" to analyze "the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3).

44. The interactive process is crucial because the ADA requires that the employer and the employee must work together in good faith to help each other determine what accommodations are necessary. *Cannice v. Norwest Bank Iowa*, 189 F.3d 723, 727 (8th Cir. 1999).

45. The EEOC has outlined four steps in this interactive process, which include: 1) Analyze the particular job involved and determine its purpose and essential functions. 2)

Consult with the individual to ascertain the precise limitation imposed by the disability. 3) identify potential accommodations and assess the effectiveness each would have in enabling the individual to perform the essential functions of the position, and 4) consider the preference of the disabled individual while selecting the accommodation that is most appropriate for both the employee and employer. 29 C.F.R. § 1630.

46. When a disabled employee can show that an employer fails to engage in the interactive process in good faith and can show that the employer failed to provide a reasonable accommodation, then the employer can be liable for consequential damages, including punitive damages. 42 U.S.C. § 2000e-k(A).

47. In this case the evidence is clear that Plaintiff is an individual with a disability. She required reasonable accommodations at her job, including specialized equipment, and limited intermittent time off to address treatment and physical therapy. In August 2012 Plaintiff required time off to address a life-threatening condition associated with her disability.

48. It is also clear that Plaintiff adequately informed her employer of her disability and of her need for reasonable accommodations.

49. However, Defendant denied Plaintiff's request and also failed to engage in the interactive process in Good Faith with Plaintiff in violation of the ADA.

50. Defendant's conduct violates the Americans with Disabilities Act ("ADA") 42 U.S.C.A. § 12101 *et seq.*

51. As a result of Defendant's actions, Plaintiff has suffered loss of wages, both in the past and in the future, as well as emotional pain, mental anguish, suffering, inconvenience,

loss of enjoyment of life in the past, and in the probability will continue to suffer in the future.

52. Additionally, the aforementioned action was done willfully or with reckless disregard for the federally protected rights of the Plaintiff.

## VII.
## CAUSE OF ACTION – FMLA VIOLATIONS

53. Each and every allegation contained in the foregoing paragraphs are realleged as if fully written herein.

54. Direct Energy is an employer covered by FMLA under 29 C.F.R. §825.104.

55. Plaintiff was an eligible employee covered by the FMLA under 29 C.F.R. §825.110.

56. Under the FMLA Plaintiff was entitled to up to 12 weeks of leave per year for any of the reasons specified in the FMLA, 29 C.F.R. §825.100. Those reasons include "because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. §2612(a)(1)(D). Leave may be taken intermittently or on a reduced leave basis.

57. Under the FMLA, DE was required to provide Plaintiff with notice of her FMLA rights within five business days of the date Plaintiff requested leave under the Act or when the employer acquires knowledge that the employee's leave may be for an FMLA-qualifying reason. 29 C.F.R. §825.300(b)(1).

58. Plaintiff's representative notified DE of her illness and admission to the hospital on or about August 20, 2012. Plaintiff's representative completed and submitted FMLA-related documentation to DE, and continued to update DE on Plaintiff's condition and continued hospital stay, surgery, and treatment.

59. Plaintiff was terminated approximately eight days after she was admitted to the hospital, despite DE's awareness of her qualifying illness. DE's act of terminating Plaintiff violated her rights under the FMLA.

60. The FMLA provides that an employer who violates the FMLA shall be liable, without limitation, for the amount of any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation, interest on the lost wages and benefits, and liquidated damages equal to the sum of the lost wages and benefits and corresponding interest. 29 U.S.C. §2617(a).

61. Additionally, the aforementioned acts committed by DE were not done in good faith, and were not based on reasonable grounds, and an award of liquidated damages under 29 U.S.C. §2617(a)(iii) are appropriate.

## VIII.
## CAUSE OF ACTION - RETALIATION

62. Each and every allegation contained in the foregoing paragraphs are realleged as if fully written herein.

63. After Plaintiff missed work due to a serious medical condition as allowed under the FMLA, Defendants engaged in activities, including the termination of her employment, in retaliation as outlined above, in violation of the FMLA, ADA, and Title VII.

64. As a result of Defendant's retaliation, Plaintiff has suffered loss of wages, bonuses and benefits, both in the past and in the future, as well as emotional pain, mental anguish, emotional and mental impairment and disability, suffering, inconvenience, loss of enjoyment of life in the past and in all probability will continue to suffer in this regard in the future.

## IX.
## CAUSE OF ACTION - UNJUST ENRICHMENT

65. During the course of her employment, Plaintiff paid for a significant number of work-related events and supplies. She paid for work-related travel, employee meals and events, training materials and events, recruiting activities, and materials needed for work-related activities. Plaintiff's expenditures on behalf of and for the benefit of DE exceeded $12,000.00.

66. Plaintiff submitted receipts and documentation of her expenditures to DE and requested reimbursement.

67. DE was aware of the activities and materials for which Plaintiff was incurring and paying expenses on DE's behalf or for DE's benefit.

68. Plaintiff made the expenditures with the expectation that she would be reimbursed by DE for the amounts she spent for DE's benefit. DE led Plaintiff to believe that she would be reimbursed for all money she paid on behalf of DE or for DE's benefit.

69. Had Plaintiff known that DE would not reimburse her for the amounts paid she would not have incurred the expenses or paid the amounts on DE's behalf.

70. Plaintiff's expenditures on behalf of or for the benefit of DE and for which she has not been reimbursed exceed $12,000.00.

71. DE has been unjustly enriched by Plaintiff's expenditures on DE's behalf or for the benefit of DE. Plaintiff has been damaged by DE's failure to reimburse her for monies expended on DE's behalf or for DE's benefit.

72. Plaintiff is entitled to reimbursement for monies expended as described above, and for pre- and post-judgment interest on those amounts.

73. Each and every allegation contained in the foregoing paragraphs are realleged as if fully rewritten herein.

# X.
# ATTORNEYS' FEES

74. Plaintiff is entitled to recover attorney's fees and costs for bringing this action as allowed by the appropriate statutes.

# XI.
# JURY DEMAND

75. Plaintiff requests a trial by jury on all issues triable by a jury in this case.

# XI.
# RELIEF REQUESTED

76. Plaintiff prays for the following relief:

    a. For actual and liquidated damages for the period of time provided by law, including appropriate backpay and reimbursement for lost pension, insurance, and all other benefits;

    b. For compensatory damages, punitive damages, and liquidated damages as allowed by law;

    c. For attorneys' fees;

    d. For expert witness fees incurred by Plaintiff in the preparation and prosecution of this action;

    e. For pre-judgment and post-judgment interest as allowed by law;

    f. For costs of court, costs of prosecuting Plaintiff's claim; and

    g. For such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

THE HANSEN LAW FIRM, P.C.

*/s/ Jakki A. Hansen*
Jakki A. Hansen
State Bar No. 24000886
SD TX No. 32213
405 Main Street, Suite 600
Houston, Texas 77002
Telephone: (281) 888-4364
Facsimile: (888) 492-9819
*jhansen@hansenlawfirmpc.com*

AHMAD, ZAVITSANOS, ANAIPAKOS,
ALAVI & MENSING P.C.
Joseph Y. Ahmad
State Bar No. 00941100
SD TX No. 11604
3460 One Houston Center
1221 McKinney Street
Houston, Texas 77002
Telephone: (713) 655-1101
Telecopier: (713) 655-0062
*joeahmad@azalaw.com*

ATTORNEYS FOR PLAINTIFF
JERI NORRIS